# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NSTAR ELECTRIC COMPANY d/b/a )<br>EVERSOURCE ENERGY, HARBOR )<br>ELECTRIC ENERGY COMPANY, and )<br>MASSACHUSETTS WATER RESOURCES )<br>AUTHORITY, )<br>)<br>Defendants. )<br>) | Case Number: 1:16-CV-11470-RGS |
| MASSACHUSETTS PORT AUTHORITY, )<br>)<br>Plaintiff in Intervention. )<br>)<br>v. )<br>)<br>NSTAR ELECTRIC COMPANY d/b/a )<br>EVERSOURCE ENERGY, HARBOR )<br>ELECTRIC ENERGY COMPANY, and )<br>MASSACHUSETTS WATER RESOURCES )<br>AUTHORITY, )<br>)<br>Defendants. )<br>) | |

**MEMORANDUM OF LAW IN SUPPORT OF MASSPORT'S
MOTION TO INTERVENE**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Massachusetts Port Authority ("Massport") submits this memorandum of law in support of its motion (the "Motion") to intervene in this action.

4841-9969-0550

## **BACKGROUND**

Pursuant to its Enabling Act, Massport is charged with the operation and maintenance of the Port of Boston, a maritime hub for global commerce and a major contributor to the New England economy.

The Port of Boston is the oldest continually active Port on the East Coast.  Massport's Conley Terminal is New England's only full-service container terminal, providing global container shipping access to the New England region's businesses and industries.  One-third of New England bound cargo passes through Conley Terminal, enabling more than 1,600 companies to ship and receive goods and products.  The Port of Boston is a major contributor to the regional economy, creating 7,000 direct jobs (one of the top ten largest employers in Boston) and supporting 50,000 total jobs.  Overall, the Port of Boston facilitates a substantial economic impact on the New England region.

With the expansion of the Panama Canal, larger shipping vessels now seek access to Conley Terminal through the Reserved Channel, requiring significant improvements to Massport's Conley Terminal facility and the dredging of Boston Harbor.  Thus, the U.S. Army Corps of Engineers New England District (the "Army Corps") is preparing to embark upon the Boston Harbor Deep Draft Navigational Improvements Project (the "Deep Draft Improvements"), a $350 million federal and state investment, including investment by Massport as a non-Federal Sponsor, in Boston Harbor.  A critical element of the Deep Draft Improvements will be the deepening of the Reserved Channel below the existing sea floor.  As a non-Federal Sponsor of the Deep Draft Improvements, Massport is required to dredge two berths at Conley Terminal to depths of -50 feet (the "Berth Projects").

Massport seeks to intervene in this action to ensure that it fulfills its public and statutory responsibilities regarding the operation, maintenance and continued viability of the Port of Boston.

## INTRODUCTION

Massport's Enabling Act gives it responsibility for "the control, operation and maintenance of the port properties", defined to include the "Port of Boston" which encompasses the Reserved Channel, Main Ship Channel and Conley Terminal.  Chapter 465 of the Acts of 1956, Section 6.   The main issue in the underlying case is the current unauthorized location of the Eversource Cable.  The presence of the Eversource Cable in its unpermitted location, will adversely impact the plans to improve the Port of Boston, plans that are approved with funding either obtained or identified, unless remedied and resolved according to the improvement schedule.  Massport has concerns about the timing and scope of the progress and nature of any proposed resolution in the underlying case that differ from the other parties in this matter precisely because of its responsibility for the Port of Boston and all of its beneficiaries, both direct and indirect.  No other party shares that role.  Massport seeks intervention here to protect the unique interests of its stakeholders – the many businesses, industries, and individuals who rely on the continuing operations of the Port of Boston.  These interests are not otherwise being represented in this action.

## PROCEDURE

On September 6, 1989, the Army Corps issued permit number MA-BOSS-890530-R-89 (the "Permit") to Boston Edison Company (now "Eversource") and the Massachusetts Water Resources Authority ("MWRA") for the installation and operation of a submarine 115 kV electric cable (the "Eversource Cable" or "Cable") beneath Boston Harbor, including through the

Reserved Channel and Main Ship Channel, to provide electric power to the Deer Island Wastewater Treatment Plant. The Cable was installed in 1989-1990.

On July 15, 2016, the Army Corps brought a complaint against Eversource and the MWRA for violation of the Permit, alleging, inter alia, that within the Reserved Channel, the Cable was installed at shallower depths than 25 feet below the bottom. (Army Corps' Complaint dated July 15, 2016 ("Compl."), ¶15) The Complaint seeks "strict compliance" with the Permit pursuant to Section 10 of the Rivers and Harbors Act of 1989 ("RHA"), 33 U.S.C. §403 (including injunctive relief pursuant to Section 12 of the RHA), and civil penalties pursuant to Section 404(s) of the Clean Water Act ("CWA"), 33 U.S.C. §1344(s). (Compl. ¶¶ 21-27)

On information and belief, the Army Corps raised the Permit noncompliance and improper location of the Cable with Eversource and the MWRA as early as 2003. While the parties in this matter have apparently considered potential solutions, Massport has only recently been made aware of the potential impact of the Cable relative to Massport's berths at Conley Terminal. There is also an active dispute between the MWRA and Eversource over who is responsible to pay the costs of complying with the Permit. _Massachusetts Water Resources Auth. v. Harbor Elec. Energy Co., et al._, Suffolk Superior Court, Civil Action No. 15-3323.

Because as-built plans and/or a survey of the location of the Cable have not been completed by Eversource, the precise location of the Cable even at this late date remains unknown to all parties. The shallower-than-permitted location of the Cable will adversely impact the Deep Draft Improvements as well as the Berth Projects, scheduled to commence with funding that is either obtained or identified. On information and belief, the Cable is also located within Conley Terminal Berths 11 and 12 that are situated in the Reserved Channel and owned by Massport.

The MWRA filed its Answer and Crossclaims on August 9, 2016. Eversource filed its Answer on August 19, 2016. The Parties must then file a Joint Pre-Trial Schedule by August 29, 2016 and the Court has scheduled a Rule 16(b) Conference for August 31, 2016.

In any resolution of the Eversource Cable location by the Army Corps, Eversource and the MWRA, Massport's interests as the operator of the Port of Boston must be considered and protected.

**ARGUMENT**

The Federal Rules of Civil Procedure allow for two types of intervention: "intervention as of right" and "permissive intervention." *See* FED. R. CIV. P. 24. A party is entitled to intervene "as of right" in an ongoing action if it meets the four-part test set forth in Rule 24(a). If the party fails to meet the requirements for intervention as of right, a court may nevertheless permit intervention under Rule 24(b) if an applicant's claim or defense has a question of law or fact in common with the action. *See, e.g.*, *Morra v. Casey*, 960 F. Supp. 2d 335, 338 (D. Mass. 2013) (concluding that the proposed intervenor was not entitled to intervene as of right and stating, "[n]evertheless, the court may allow [the proposed intervenor] to intervene under Rule 24(b)(2)").[1]

Here, Massport is entitled to intervene as of right under Rule 24(a) or, alternatively, permissively under Rule 24(b). Massport satisfies all of the requirements set forth in Rule 24. Moreover, participation of Massport for the purpose of protecting its immediate project

---

[1] The courts have permitted intervention where the proposed intervenor seeks to take part in an action that concerns the Army Corps or a port. *See, e.g.*, *State of South Dakota v. Ubbelohde*, 330 F.3d 1014 (8th Cir. 2003) (State of South Dakota sued the Army Corps for alleged mis-management of the Missouri River; Court of Appeals reversed district court's denial of State of Nebraska's motion to intervene as of right under Fed. R. Civ. P. 24(a)(2)); *Atlantic Sea Island Group LLC v. Connaughton*, 592 F. Supp. 2d 1 (D.D.C. 2008) (State of New Jersey permitted to intervene as of right in a dispute between a liquefied natural gas developer, the Administrator of the Maritime Administration and Secretary of the Department of Transportation over the scope of the Deepwater Port Act, 33 U.S.C. §§ 1501-1524).

scheduling interests as well as the interests of its stakeholders will not prejudice the original parties and is in the public interest.

## I. MASSPORT IS ENTITLED TO INTERVENE IN THIS ACTION AS OF RIGHT.

A party that seeks to intervene as of right under Rule 24(a) must establish "(1) the timeliness of her motion to intervene, (2) her interest in the property or transaction that is the subject of the pending action, (3) a realistic threat that the disposition of the action may, as a practical matter, impair or impede her ability to protect that interest and (4) that her interest will not be represented adequately by any existing party to the action." *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067-NMG, 2014 U.S. Dist. LEXIS 76111, at *8-9 (D. Mass. June 3, 2014) (citing *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009)) (further citations omitted). Here, Massport meets the standard to intervene as of right.

### A. Timeliness

Timeliness, which "is of first importance," *United Nuclear Corp. v. Cannon*, 696 F.2d 141, 143 (1st Cir. 1982), is "determined from all the circumstances." *Gulbankian v. MW Mfrs., Inc.*, Civ. Nos. 10-10392-RWZ; 12-30122-RWZ, 2014 U.S. Dist. LEXIS 64936, at *6 (D. Mass. May 9, 2014) (quoting *Culbreath v. Dukakis*, 630 F.2d 15, 17 (1st Cir. 1980)). A motion to intervene must be "filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights." *Id.* at *6-7 (quoting *R & G Mortg.*, 584 F.3d at 7; *see Cannon*, 696 F.2d at 143 (stating that, "knowledge of a suit is not necessarily knowledge that one's interest is implicated"). The factors to be considered in evaluating timeliness are:

> (i) the length of time the prospective intervenors knew or reasonably should have known of their interest before they petitioned to intervene; (ii) the prejudice to existing parties due to the intervenor's failure to petition for intervention promptly; (iii) the prejudice the prospective intervenors

would suffer if not allowed to intervene; and (iv) the existence of unusual circumstances militating for or against intervention.

*Caterino v. Barry*, 922 F.2d 37, 40 (1st Cir. Mass. 1990) (quoting *United States v. Metro. Dist. Com.*, 865 F.2d 2, 5 (1st Cir. 1989).

Massport's Motion is timely by any measure. The Army Corps filed the litigation on July 15, 2016. The MWRA filed an Answer and Crossclaims on August 9, 2016 and Eversource filed its Answer on August 19, 2016. The Army Corps, Eversource and the MWRA will not be prejudiced as the litigation is in its beginning stages. Massport's interests and the interests of its stakeholders, however, would not be represented if Massport were not able to intervene.

### B.  Interest Relating to Action

Massport has the requisite interest in this action to justify intervention as of right. The language of Rule 24 frames the interest requirement in broad terms, requiring simply that the intervenor "claim[] an interest relating to the property or transaction that is the subject of the action." FED. R. CIV. P. 24(a)(2). Although this interest is "not amenable to a surgically precise definition" in order to satisfy this requirement, the interest must be "direct" and "significantly protectable." *Ungar v. Arafat*, 634 F.3d 46, 51 (1st Cir. 2011) (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971)). Still, the interest requirement for purposes of intervention under Rule 24 is to be liberally construed, and not narrowly tied to specific property or pecuniary interests. *See In re Lopez Soto*, 764 F.2d 23, 26 (1st Cir. 1985) (stating that an intervenor's interest "does not have to be of a legal nature identical to that of claims asserted in the main action" and that "[a]ll that is required is an interest in the property at issue") (internal punctuation and further citation omitted).

Here, Massport possesses the requisite interest because any action regarding the Cable and its depth affects Massport's public responsibilities as operator of the Port of Boston. To

7

remain competitive, the Port must have the ability to provide access to larger shipping vessels, especially in light of the expansion of the Panama Canal. The current depth of the Boston Harbor channels and facilities needs to be increased to facilitate service to larger shipping vessels and to ensure the continued viability of the Port of Boston, which is a central component of Massport's mission.

As the Army Corps, Eversource and the MWRA seek resolution regarding the location of the Cable, Massport's interests must be considered to ensure that the timing and schedule of the solution will coincide with the needed improvements to the Port of Boston, including the Deep Draft Improvements and the Berth Projects, which are crucial to the continued competitiveness of the Port of Boston.

### C. Impairment of Massport's Ability to Protect Its Interest

Once a movant has successfully established a sufficient interest in the subject of the action, the movant must demonstrate that disposition of that action may, as a practical matter, impair or impede the movant's ability to protect that interest. 6 Moore's Federal Practice § 24.03; *see* FED. R. CIV. P. 24(a)(2).

The disposition of this action – specifically, any modification of the Permit or current Cable location – may impair and impede Massport's ability to protect the interests of the public with which it is charged. If the litigation were to proceed or potentially settle without considering Massport's interests, actions could be taken that would impact the ability of Massport to accomplish its statutory mission.

### D. Adequacy of Representation

The First Circuit has adopted a three-factor test to assess adequacy of representation:

> (1) Are the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly

> be made by the former; (2) is that present party capable and willing to make such arguments; and (3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit?

*Nextel Communs. of the Mid-Atlantic, Inc. v. Town of Hanson*, 311 F. Supp. 2d 142, 150 (D. Mass. 2004) (quoting *Cannon*, 696 F.2d at 144). If an intervenor "has the 'same ultimate goal' as an existing party, then there is a presumption of adequacy." Id., at 151 (quoting *Cannon,* 696 F.2d at 144). Although the "strength of this presumption is 'ratcheted upward' when the intervenor attempts to enter on the same side as a government agency to defend the agency's decision", the burden "is not onerous: the intervenor need only show that 'representation *may* be inadequate, not that it *is* inadequate.'" Id. (citations omitted).

In cases where an intervenor is not aligning itself with a government agency, typically "an intervenor need only make a 'minimal' showing that the representation afforded by a named party would prove inadequate." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 545 (1st Cir. 2006) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Here, Massport is on a similar side as the Army Corps, but Massport has its own mandated statutory interests and responsibilities. There is no other party presently involved in this action whose interests are substantially similar to Massport's and who will "undoubtedly" protect Massport's interests and statutory responsibilities. Massport's interest is to ensure the timely completion of the Berth Projects, and the timely completion of the long-planned Deep Draft Improvements in order to maintain a viable, competitive Port for its many users and stakeholders. The Army Corps seeks to resolve the Permit and Cable issue, but the Army Corps does not operate the Port of Boston and does not share the same interests or the same urgency that Massport has as the operator of the Port of Boston. *See, id. a*t 546 (stating that "[o]ne way for the intervenor to show inadequate representation is to demonstrate that its interests are

sufficiently different in kind <u>or degree</u> from those of the named party") (emphasis added) (citing *Cannon*, 696 F.2d at 144 and *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 675 (6th Cir. 2004) ("Asymmetry in the intensity . . . of interest can prevent a named party from representing the interests of the absentee.")); *see also Connaughton*, 592 F. Supp. 2d at 7 (State of New Jersey permitted to intervene in Deepwater Port Act dispute where even though there was "an extensive track record of cooperation" between New Jersey and the federal defendants, "the federal defendants have an obligation to represent the interests of the entire country . . . and it is not clear that the federal defendants' interests will always align with the narrower interests of New Jersey"). Accordingly, the current representation is inadequate to protect Massport's interests.

## II. ALTERNATIVELY, THIS COURT SHOULD PERMIT MASSPORT TO INTERVENE IN THIS ACTION UNDER RULE 24(b).

Upon a timely motion pursuant to Rule 24(b), the Court may permit any third party to intervene who "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). The Court must also consider "whether the permissive intervention will unduly delay or prejudice the adjudication of the original parties' rights." *KG Urban Enters., LLC v. Patrick*, 293 F.R.D. 42, 49 (D. Mass. 2013) (citing FED. R. CIV. P. 24(b) (3)). Furthermore, "the Court should also consider whether the putative intervenor's interest is adequately represented by an existing party." *Id.* (citing *Massachusetts Food Ass'n v. Sullivan*, 184 F.R.D. 217, 224 (D. Mass. 1999) (setting forth requirements for permissive intervention). Additionally, apart from those considerations, "a district court may consider 'almost any factor rationally relevant' to the motion for permissive intervention and enjoys 'very broad discretion in granting or denying the motion.'" *Id.* (quoting *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999)).

10

Permitting Massport to intervene in this action to protect the future of the Port of Boston by safeguarding the activities and schedule of the improvements to the Port of Boston, will not delay or prejudice the adjudication of any rights.  Massport is not asking for any other action that would significantly alter the course of this matter.  The purpose for seeking intervention is limited to protecting Massport's interests, and the immediacy of those interests – interests that otherwise would not be represented.

Accordingly, for these reasons, and for the reasons discussed at length above, if the Court finds that Massport has not satisfied the requirement for intervention as of right, the Court should nevertheless permit Massport to intervene under Rule 24(b).

## CONCLUSION

For the foregoing reasons, Massport respectfully requests that the Court grant Massport's Motion and permit Massport to intervene in this matter.

Respectfully submitted,

**MASSACHUSETTS PORT AUTHORITY**

Applicant for Intervention

By its attorneys,

*/s/ Brian Kelly*
Brian Kelly (BBO# 549566)
bkelly@nixonpeabody.com
Donald D. Cooper (BBO# 098330)
dcooper@nixonpeabody.com
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts
P: (617) 345-1000
F: (617) 345-1300

Dated: August 19, 2016

## **CERTIFICATE OF SERVICE**

      I hereby certify that the above document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that copies will be sent via electronic mail to those indicated as non-registered participants on August 19, 2016.

                                      */s/ Brian Kelly*
                                      Brian Kelly

4841-9969-0550