UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>NSTAR ELECTRIC COMPANY d/b/a<br>EVERSOURCE ENERGY, HARBOR<br>ELECTRIC ENERGY COMPANY, and<br>MASSACHUSETTS WATER<br>RESOURCES AUTHORITY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 1:16-cv-11470-RGS<br><br><br>**NSTAR Electric Company d/b/a**<br>**Eversource Energy and Harbor**<br>**Electric Energy Company's Joint Motion**<br>**to Dismiss Massachusetts Water**<br>**Resources Authority's Cross-claims** |

**MEMORANDUM OF LAW IN SUPPORT OF NSTAR ELECTRIC COMPANY**
**D/B/A EVERSOURCE ENERGY AND HARBOR ELECTRIC ENERGY COMPANY'S**
**JOINT MOTION TO DISMISS MASSACHUSETTS**
**WATER RESOURCES AUTHORITY'S CROSSCLAIMS**

Defendants NSTAR Electric Company d/b/a Eversource Energy ("NSTAR") and Harbor

Electric Energy Company ("HEEC") (collectively, the "Eversource Defendants") hereby submit

this Memorandum of Law in support of their Joint Motion to Dismiss the cross-claims asserted

against them by the Massachusetts Water Resources Authority ("MWRA").

**I.  INTRODUCTION**

This action arises from a 1989 permit (the "Permit") issued by the U.S. Army Corps of

Engineers ("ACOE") to all three Defendants in this action – NSTAR[1], HEEC[2], and the MWRA –

for the installation and operation of a 115kV submarine electric cable (the "Cable") beneath

---

[1] Prior to 2007, NSTAR was known as Boston Edison Company ("Boston Edison"). Compl., ¶ 2. Accordingly, Boston Edison Company, and not NSTAR, is the entity listed on the Permit. Id., ¶ 9. This Memorandum refers to both NSTAR and its predecessor Boston Edison as "NSTAR" throughout.

[2] HEEC was not originally listed on the Permit in 1989; the Permit was amended in February of 1990 to add HEEC as a permittee. See Compl., ¶¶ 9-10.

Boston Harbor for the purpose of powering the construction and operation of the Deer Island Waste Water Treatment Plant (the "Deer Island Facility").  See generally Compl.  Plaintiff alleges that Defendants violated the Permit by burying the Cable at depths shallower than specified by the Permit Id., ¶¶ 13-20.  Plaintiff seeks to enjoin Defendants from violating the Permit and to recover civil penalties from Defendants for their alleged violations.  See id., ¶¶ 21-27.

On August 9, 2016, the MWRA filed its Answer to Plaintiff's Complaint.  In addition to responding to Plaintiff's allegations, the MWRA asserted a number of cross-claims against the Eversource Defendants. First, the MWRA seeks a declaration from this Court that it is not contractually obligated to pay certain future costs ("Cable Protection Costs") associated with protecting the Cable from the impacts of a dredging project ("the "Project") planned by the ACOE on behalf of the Massachusetts Port Authority ("Massport").  MWRA Crossclaims ("Crossclaims"), ¶¶ 24-25, 27, 30-31.  Second, the MWRA seeks indemnification from the Eversource Defendants, evidently under a common law theory of recovery, for any future costs incurred by the MWRA arising from Defendants' alleged failure to comply with the Permit.  Id., ¶¶ 32-35.  Finally, the MWRA alleges that the Eversource Defendants breached the terms of an Interconnection Agreement executed by the parties on August 14, 1990, by failing to negotiate a successor agreement in good faith, and that such breach constitutes a violation of Sections 2 and 9 of Chapter 93A.  Id., ¶¶ 35-46.

The Court should dismiss the MWRA's cross-claims against the Eversource Defendants in their entirety for the following reasons: First, Massachusetts law vests the Department of Public Utilities (the "D.P.U.") with primary jurisdiction over any disputes arising out of the distribution of electricity within the Commonwealth, and therefore, the Court should dismiss the

2

cross-claims and allow the D.P.U. to resolve any conflict between the parties concerning the proper allocation of costs incurred in providing electric services to the MWRA, including any future Cable Protection Costs.  Second, even if the courts were the appropriate forum for the adjudication of the MWRA's cross-claims, these same cross-claims are currently the subject of a pending state court proceeding and should therefore be dismissed pursuant to the prior pending action doctrine.  Third, as both the Massachusetts Superior Court and the D.P.U. have already determined, the MWRA's declaratory judgment claims are premature and fail to allege any actual controversy between the parties.  Fourth, as a Massachusetts Superior Court has already concluded, the MWRA's Chapter 93A claims (Count III) must fail because the MWRA has failed to allege anything more than a mere breach of contract which, in and of itself, does not rise to the level of a Chapter 93A violation.  Finally, Plaintiff's simultaneous assertion of identical claims in multiple forums amounts to impermissible "claim-splitting" and, therefore, these claims should be dismissed by the Court.

## II.  FACTUAL BACKGROUND

### a.  HEEC's Provision of Electricity to the MWRA.

On May 19, 1989, this Court imposed upon the MWRA a series of deadlines for the completion of wastewater treatment facilities on Deer Island in order to improve the quality of the water within Boston Harbor and to avoid the imposition of penalties under the Clean Water Act ("CWA").  See Crossclaims, ¶¶ 8-9.  In particular, this Court's May 19, 1989 Order required the MWRA to have electrical power available on Deer Island sufficient to commence construction of the facilities by October 1990.  Id.

In order to accomplish the objectives established by this Order, NSTAR created  HEEC, a wholly-owned  subsidiary  established  for  the  sole  purpose  of  facilitating  the  financing,

construction, ownership, and operation of electric facilities designed to deliver power to the Deer Island Facility. The D.P.U. approved the creation of HEEC in 1989, and HEEC has remained subject to the D.P.U.'s jurisdiction since that time. See Boston Edison Co. D.P.U. 89-220 (1989).

### b. The Interconnection Agreement.

Following the creation of HEEC, the MWRA, HEEC and NSTAR entered into an Interconnection Agreement, dated August 14, 1990. See Crossclaims, ¶ 9 & Ex.1. Among other things, the Interconnection Agreement required HEEC to construct certain distribution facilities, including the Cable that runs from NSTAR's K-Street substation in South Boston, across the seabed of the Boston Harbor, to the MWRA's Deer Island Facility. See id., Ex.1. The Cable continues to be the primary source for the distribution of electricity to that Facility.[3]

The term of the Interconnection Agreement was for twenty-five (25) years, over which time the costs of construction and operation of the Cable and related electric facilities were to be amortized and paid by the MWRA. Crossclaims, Ex.1. The Interconnection Agreement established the terms and conditions under which the MWRA paid for the construction, ownership and operation of HEEC's electric facilities during the contract term, and defined HEEC's rights to recover costs from the MWRA. Id. In particular, the Interconnection Agreement specified the cost-recovery mechanism for both operation and maintenance costs, as well as capital expenditures. Id.

---

[3] See HEEC's October 30, 2015 Petition to the D.P.U, D.P.U. 15-157 (the "Petition"), ¶ 5, a true and accurate copy of which is attached hereto as **Exhibit 1**. A state administrative filing which is also a public record – such as HEEC's Petition – may be considered by the Court, along with the pleadings, in deciding the Eversource Defendants' Motion to Dismiss without having the effect of converting the Motion into one for summary judgment. See, e.g., Freeman v. Town of Hudson, 714 F.3d 29, 36-37 (1st Cir. 2013) (citing with approval Mack v. S. Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (record of state administrative proceeding constituted a public record of which the district court was entitled to take judicial notice in considering a motion to dismiss)); Alt. Energy Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (also relying on Mack); see also Bellerman v. Fitchburg Gas & Elec. Light Co., C.A. No. WO-0923B, 2009 WL 3086005, at *2 (Mass. Super. Sept. 9, 2009) (taking judicial notice of a tariff issued by the D.P.U.).

Shortly after it was executed, HEEC and NSTAR sought and received approval of the Interconnection Agreement from the D.P.U.[4]  Since that time, the D.P.U has been the agency exclusively responsible for oversight of the electric distribution facilities constructed pursuant to the Interconnection Agreement. Significantly, the MWRA did not object to HEEC's efforts to seek D.P.U. approval of the Agreement, nor did it take the position that the Agreement required approval from the Federal Energy Regulatory Commission ("FERC").

The Interconnection Agreement was due to expire on May 12, 2015.  See Ex. 1; Crossclaims, Ex.1.  The parties agreed to several short extensions of the term pending efforts to negotiate a successor agreement, but those efforts ended without a new contract in place that would enable HEEC to recover costs of service on a going-forward basis.  See Crossclaims, ¶ 40. Although the contract formally expired on November 12, 2015, HEEC continues to operate its electric facilities so that the power supply to the Deer Island facility remains unaffected by the expiration of the contract.  See Ex. 1.

### c.  The Alleged Permit Violations

Prior to the installation of the Cable, Defendants obtained the subject Permit from the ACOE, requiring the Cable to be installed at specified depths beneath the Boston Harbor.  Id., ¶ 12.  However, during the course of construction, it became apparent that the only way to uniformly reach the required permit depths would have been to blast through existing bedrock, which was discouraged by both the ACOE and the Massachusetts Department of Environmental Protection.  See id., ¶ 16.

As a result, the depth actually achieved during construction, although less than the Permit specified in certain locations, was the maximum achievable depth in those locations, utilizing

[4] A true and accurate copy of the September 26, 1991 Joint Application filed by Defendants with the D.P.U. (D.P.U. 90-288) is attached hereto as **Exhibit 2**.

construction methods approved at that time. See id., ¶ 19. Moreover, the depth that was actually achieved was below the official maximum depth then anticipated by the ACOE for any future shipping needs. The ACOE was aware of the precise location of the Cable having received the as-built specifications by letter dated October 15, 1990.

By letter dated March 20, 2003, the ACOE informed both HEEC and the MWRA that the Cable may not have been installed in compliance with the terms and conditions set forth in the Permit. Id. Specifically, the ACOE expressed concern over the fact that the depth of the Cable was less than Permit required in some locations, and could potentially impact the Massport Project.

Thereafter, over the course of more than a decade, the parties engaged in discussions concerning potential methods for protecting the Cable during the Project. See id., ¶ 22. Among other things, Defendants proposed that concrete mat structures be placed over the Cable to provide protection during the dredging operations. Although the parties remain hopeful that the concrete mat solution will solve the problem, they have not reached a final agreement with the ACOE regarding a mutually agreeable resolution of the alleged Permit violations. See id., ¶¶ 39-40. Further, although the Massport Project has received the necessary approvals, actual construction for the Project has yet to begin, and therefore it remains unclear what impact, if any, the Cable will have on the Project.

## III. PROCEDURAL HISTORY

### a. HEEC's Petition to the D.P.U.

On October 30, 2015, HEEC filed its Petition with the DPU seeking approval of a proposed tariff designed to implement a rate mechanism that would enable it to recover its costs of service for the Cable on a going-forward basis. See Ex. 1. This proposed rate mechanism

would allow the D.P.U. to determine whether any costs incurred in distributing electricity to the Deer Island Facility, *including any future Cable Protection Costs*, are reasonable and prudent. The D.P.U. docketed HEEC's Petition, but then suspended the effective date of the proposed rate until November 1, 2016 in order to assess the proposed tariffs.[5]

The MWRA moved to dismiss HEEC's petition, asserting, *inter alia*: (1) that HEEC breached its obligations under the Interconnection Agreement by filing its proposed tariff with the D.P.U. rather than FERC; and, (2) even if the D.P.U. had primary jurisdiction over HEEC's proposed tariff, it lacked primary jurisdiction over the issue of which party was financially responsible for any future Cable Protection Costs. See Ex. 3, p. 5. With respect to the first issue, the D.P.U. determined that it had primary jurisdiction over the issue of whether the Interconnection Agreement required HEEC to file its tariff with FERC rather than the D.P.U. Id., p. 14. The D.P.U. further ruled, as a matter of law, that the MWRA failed to demonstrate that HEEC violated the terms of the Interconnection Agreement by filing its Petition with the DPU rather than FERC and, denied the MWRA's motion to dismiss on that basis. Id., pp. 38-39.

With respect to the latter issue, the D.P.U. initially held that it was not the appropriate forum for resolution of the parties' dispute regarding liability for future Cable Protection Costs. Id., p. 13. However, in response to a Motion for Reconsideration filed by HEEC, the D.P.U. vacated this holding.[6] Specifically, the D.P.U. determined that because HEEC's Petition did not seek recovery of any future Cable Protection Costs, it was premature for the D.P.U. to decide whether it would exercise primary jurisdiction over that issue Ex. 4, p. 8. Accordingly, the D.P.U. determined:

---

[5] See D.P.U.'s May 5, 2016 Interlocutory Order, D.P.U. 15-157 (the "D.P.U. Interlocutory Order"), p. 1, a true and accurate copy of which is attached hereto as **Exhibit 3**.

[6] See D.P.U. June 3, 2016 Order on Reconsideration, D.P.U. 15-157 (the "D.P.U. Order on Reconsideration"), a true and accurate copy of which is attached hereto as **Exhibit 4**.

> Here, upon reconsideration, the Department finds that it is
> appropriate to set aside its determination of jurisdiction regarding
> future Cable Protection Costs.   The Department finds that such
> primary jurisdiction analysis was not necessary to its ultimate
> determinations regarding the stated purpose of the Interlocutory
> Order: scope of the instant proceeding, motion to dismiss or
> motion to compel.  On reconsideration, the Department determines
> that such jurisdictional analysis is better addressed if and when
> such Cable Protection Costs are incurred and presented for
> recovery in a filing before the Department.   Accordingly, the
> Department will not reach the substantive arguments raised by
> HEEC and MWRA, but will instead set aside our jurisdictional
> findings pertaining to future Cable Protection Costs in the
> Interlocutory Order and defer determination of jurisdiction until
> such time as Cable Protection Costs presented for recovery.

Id. at pp.7-8.

### b. The MWRA's State Court Action.

Three days after HEEC filed its Tariff Petition with the D.P.U., the MWRA filed a

Complaint against the Eversource Defendants in the Massachusetts Superior Court Business

Litigation Session (the "Superior Court Action").[7]  The claims asserted by the MWRA in the

Superior Court Action are virtually identical to the cross-claims asserted by the MWRA in this

action. Specifically, in Count I, the MWRA sought a declaration that, under the terms of the

Interconnection Agreement, the MWRA cannot be held liable for any future Cable Protection

Costs.  See Ex. 5, ¶¶ 31-32. In Count II, the MWRA asserted a claim for breach of contract,

alleging that: (1) the Eversource Defendants "intend to breach the provisions of the

[Interconnection] Agreement respecting the allocation of risk of construction costs… and have

consistently expressed an intention not to observe this provisions," and (2) that the Eversource

---

[7] Mass. Water Resources Auth. v. Harbor Elec. Energy Co., et al., Suffolk Superior Court, C.A. No. 2015-033323-BLS.  A true and accurate copy of the MWRA's First Amended Superior Court Complaint is attached hereto as **Exhibit 5**.  Filings from state court proceedings may be considered by the Court in deciding the Eversource Defendants' Motion to Dismiss without having the effect of converting the Motion into one for summary judgment. See, e.g., Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000).

Defendants breached the Interconnection Agreement by filing its Tariff Petition with the D.P.U. rather than FERC. See id., ¶¶ 33-36.  In Count III, the MWRA alleged that the Eversource Defendants breached the implied covenant of good faith and fair dealing. Id., ¶¶ 37-40.  Finally, in Count IV, the MWRA alleged that the Eversource Defendants violated Chapter 93A by deliberately breaching the Interconnection Agreement by failing to negotiate a successor agreement in good faith.   Id., ¶¶ 41-56.   Specifically, the MWRA alleged that, during negotiations, the Eversource Defendants attempted to impose an "unbargained-for and absolute pre-condition upon their existing contractual obligation… to negotiate the terms of the successor agreement." Id., ¶ 50.

The Eversource Defendants subsequently filed a motion to dismiss the MWRA's First Amended Complaint, which was granted by the Court (Salinger J.) on June 24, 2016.[8]   The Court disposed of the MWRA's declaratory judgment claim, finding that this claim was not ripe for adjudication because no "actual controversy" existed between the parties:

> The MWRA does not allege that [the Eversource] Defendants have ever billed the MWRA for any cable protection costs, or even that [the Eversource] Defendants have incurred any cable protection costs that they seek to recover from the MWRA… [T]he MWRA alleges no facts suggesting that [the Eversource] Defendants have done anything… to force [the] MWRA to pay any costs for protecting the cable from future dredging.  Thus, at most, the MWRA's allegations plausibly suggest that the parties read their [Interconnection Agreement] differently.  Disputes over how to read a… contract, "by themselves do not rise to the level of actual controversy."

Ex. 6, p. 2 (quoting Entergy Nuclear Generation Co. v. Dept. of Evtl. Prot., 459 Mass. 319, 325 (2011)).

With respect to the MWRA's contract claims (Counts II and III), the Superior Court determined that they should be dismissed because: (1) the D.P.U. had already asserted primary

---

[8] A true and accurate copy of the Superior Court's "Memorandum and Order Allowing the [Eversource] Defendants' Motion to Dismiss" is attached hereto as **Exhibit 6**.

jurisdiction over the issue of whether HEEC was required to file its tariff with FERC rather than the D.P.U., see Ex. 6, p. 2; and, (2) "the MWRA may not sue for breach of contract on the ground that [the Eversource] Defendants have threatened to violate the [Interconnection Agreement] at some unspecified time in the future by billing MWRA for cable protection costs that [the Eversource] Defendants have not yet incurred," because Massachusetts courts do not recognize the doctrine of anticipatory repudiation. Id., p. 3 (citing Cavanagh v. Cavanagh, 33 Mass. App. Ct. 240, 243 (1992)). Finally, with respect to Count IV, the Superior Court concluded that "the allegations of [the MWRA's] amended complaint do not plausibly suggest that [the Eversource] Defendants have committed any unfair or deceptive acts in violation of [Chapter 93A]," because "[the Eversource Defendants'] failure to negotiate a successor agreement, to cover future cable operating costs after expiration of the [Interconnection Agreement] cannot constitute a breach of [Chapter 93A] in the absence of reasonable and detrimental reliance on the other side, which is not alleged here." Ex. 6, p. 3 (citing Lambert v. Fleet Nat'l Bank, 449 Mass. 119, 127 (2007)).

On July 20, 2016, the MWRA filed a Notice of Appeal of the Superior Court's dismissal of its Complaint; the MWRA's appeal remains pending. See Crossclaims, ¶ 2.

## IV. LEGAL STANDARD

In order to survive a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Parker v. Hurley, 514 F.3d 87, 95 (1st Cir. 2008). Specifically, a claimant must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Dartmouth Review v. Dartmouth College, 889 F.3d 13, 16 (1st Cir. 1989); Gooley v. Mobil Oil

Corp., 851 F.2d 513, 515 (1st Cir. 1988). Mere "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" do not constitute sufficient allegations. Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (citation and internal quotation marks omitted).

### ARGUMENT

#### a.   The D.P.U. Has Primary Jurisdiction Over the MWRA's Cross-Claims.

"The doctrine of primary jurisdiction is a prudential doctrine developed by the federal courts to promote accurate decision making and regulatory consistency in areas of agency expertise." Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envtl. Prot., 196 F.3d 302, 304 (1st Cir. 1999). Pursuant to the doctrine, "if a court concludes that an issue raised in an action before the court is within the primary jurisdiction of an [administrative] agency, the court will defer any decision in the action before it until the agency has addressed the issue that is within its primary jurisdiction.   The court retains jurisdiction over the dispute itself and all other issues raised by the dispute, but it cannot resolve that dispute until the agency has resolved the issue that is in its primary jurisdiction." Id. Thus, "the effect of a court's decision to invoke the primary jurisdiction doctrine is that, [']if the issues referred to the agency... are critical to judicial resolution of the underlying dispute, the court cannot proceed with the trial of the case until the agency has resolved those issues.  In many circumstances, the court that referred the issues to the agency also must wait until the agency's decision has been either upheld or set aside by a different reviewing court.'" Id.

"The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and of courts.... [A] court [normally] should not act upon subject matter that is peculiarly within the agency's specialized field without taking into account what the agency has to offer, for otherwise parties who are subject to the agency's

continuous regulation may become the victims of uncoordinated and conflicting requirements.'"
Dolan v. Utica Mut. Ins. Co., 630 F. Supp. 305, 307 (D. Mass. 1986) (quoting Murphy v. Admin.
of Div. of Personnel Admin., 377 Mass. 217, 221 (1979)).

The enabling statute for the D.P.U. provides that the Department shall have jurisdiction
over "[t]he distribution of electricity." See Mass. Gen. Laws ch. 164, § 1; see also Weld v. Gas
& Elect. Light Comm'rs, 197 Mass. 556, 558 (1908). Additionally, the D.P.U. has jurisdiction to
investigate and examine the quality and service of gas and electric companies, see Mass. Gen.
Laws ch. 164, § 93 and, more generally, has supervisory authority over gas and electric
companies, see id., § 76.[9] In accordance with the statute, electric utility companies such as the
NSTAR and HEEC are required to obtain the D.P.U.'s approval of all rates charged to customers
for the sale and distribution of electricity. Moreover, pursuant to the statute, absent a D.P.U.
order to the contrary, "all contracts for the sale of gas or electricity by gas or electric
companies... shall be filed" with the D.P.U. Id., § 94.

Thus, the D.P.U. exercises jurisdiction over issues involving interpretations of tariffs,
D.P.U. rules, or a utility company's general business practices and, pursuant to its general
supervisory authority under Section 76, also exercises jurisdiction over disputes involving
commercial customers of utility companies. See, e.g., Leonard Manuf. Co. v. Boston Gas Co.,
D.P.U. 18953, at 2 (1977); People's Church v. Boston Gas Co., D.P.U. 1445, at 4. Accordingly,
based on the doctrine of primary jurisdiction, Massachusetts courts routinely dismiss actions in
deference to the D.P.U.'s authority to decide matters exclusively within its province. See, e.g.,
Holyoke Water Power Co. v. City of Holyoke, 349 Mass. 442, 446 (1965); Boston Edison Co. v.

---

[9] Specifically, Mass. Gen. Laws ch. 164, § 76 provides that the D.P.U. "shall have the general supervision of all gas
and electric companies and shall make all necessary examination and inquiries and keep itself informed as to the
condition of the respective properties owned by such corporations and the manner in which they are conducted with
reference to the safety and convenience of the public, and as to their compliance with the provisions of law and the
orders, directions and requirements of the department."

Brookline Realty & Invest. Corp., 10 Mass. App. Ct. 63, 66 (1980); Mass. Elec. Co. v. Doctors. Hosp. of Worcester, 11 Mass. App. Ct. 889, 890 (1980).

The allegations contained in the MWRA's cross-claims fall squarely within the jurisdiction of the D.P.U.  The D.P.U. approved the creation of HEEC as well as the Interconnection Agreement that gives rise to the MWRA's cross-claims, and is best suited to resolve any claims related to the negotiation of a successor agreement, and/or the reasonableness and/or allocation of costs contemplated by the Interconnection Agreement, including future Cable Protection Costs.  Indeed, in the event that HEEC incurs future costs to protect the Cable and to maintain service to the MWRA, HEEC will  be required to demonstrate to the D.P.U. that the costs were reasonable and prudently incurred, and therefore qualify for recovery through the tariff proposed for the D.P.U.'s approval in the pending department proceeding.  In the event that the MWRA believes that any future Cable Protection Costs which HEEC may later impose on the MWRA are not properly allocated to the MWRA, and/or are not reasonable and prudent, they are free to (once again) intervene in the D.P.U. proceeding and present appropriate counterarguments.

Dismissal of the MWRA's cross-claims would also serve principles of judicial economy underlying the doctrine of primary jurisdiction, because dismissal would avoid the potential for conflicting decisions with respect to the proper interpretation of the Interconnection Agreement. Moreover, even if this Court were to decide the discrete contract interpretation issues and related legal issues set forth in the MWRA's cross-claims, unlike the D.P.U., it does not have the ability and/or authority to efficiently resolve both the existing rate dispute as well as any future disputes over responsibility for potential Cable Protection Costs in the context of a single proceeding.

Most importantly, as set forth above, the D.P.U. has expressly reserved its right to exercise primary jurisdiction over the issue of liability for any future Cable Protection Costs if and when those costs are actually incurred.  In light of the fact that the DPU may ultimately exercise jurisdiction over this issue, the doctrine of primary jurisdiction dictates that the cross-claims be dismissed, because the "exhaustion of the possibilities of [D.P.U.] action should precede independent action" in this court.  See Holyoke Water Power Co., 349 Mass. at 446.

### b.  The MWRA's Cross-Claims Are Barred by the Prior Pending Action Doctrine.

Under the prior-pending-action doctrine, "the pendency of a prior action, in a court of competent jurisdiction, between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought, constitutes good ground for abatement of the later suit." Quality One Wireless, LLC v. Goldie Grp., LLC, 37 F. Supp. 3d 536, 540 (D. Mass. 2014) (quoting O'Reilly v. Curtis Pub. Co., 31 F. Supp. 364, 364-65 (D. Mass. 1940)).  The doctrine arises out of concerns about judicial efficiency and avoiding inconsistent judgments, and stems from a court's inherent power to control its docket.  See Quality One, 37 F. Supp. 3d at 542; Carmack v. Mass. Bay Transp. Auth., 465 F. Supp. 2d 18, 32 n.10 (D. Mass. 2006).  "Moreover, 'when it is possible that, through amendment, each action may contain all of the issues and parties presently contained in either action, the continuation of the first action to be filed is favored.'" Quality One, 37 F. Supp. 3d at 541 (quoting Holliday v. City of Newington, 2004 WL 717160, at *1 (D. Conn. Mar. 19, 2004)).  In determining whether dismissal in favor of a prior pending action is appropriate, the courts consider a variety of factors, including: considerations of comity; promotion of judicial efficiency; adequacy and extent of relief available in the alternative forum; the identity of parties and issues in both actions; the likelihood of prompt disposition in the alternative forum; the convenience of parties,

counsel, and witnesses; the possibility of prejudice to a party as a result of the dismissal; and, the risk of inconsistent judgment. See Quality One, 37 F. Supp. 3d at 542-43 and cases cited.

Here, all of the issues presented in the MWRA's cross-claims – *i.e.*, whether the Eversource Defendants are liable for future Cable Protection Costs (either contractually under the Interconnection Agreement or under a theory of common law indemnification) and whether the Eversource Defendants violated Chapter 93A by allegedly failing to negotiate a successor agreement and/or impose responsibility for the Cable Protection Costs on the MWRA – are identical to those presented in the MWRA's state court action which was initiated prior to this action and which remains on appeal.  The MWRA should not be allowed to waste precious judicial resources by asserting  claims in a state court action and, when that avenue appears to be unavailing, assert those same claims in a parallel federal court proceeding.  Nor should the Eversource Defendants be required to simultaneously litigate the same claims in both federal and state court, particularly when those claims are appropriately subject to the D.P.U.'s primary jurisdiction.

### c. The MWRA's Cross-claim for Declaratory Judgment (Count I) Fails to Identify Any Actual Controversy Between the Parties.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides, in pertinent part:

> In a case of **actual controversy** within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decreed and shall be reviewable as such.

28 U.S.C. § 2201 (emphasis added).

"Requests for a declaratory judgment may not be granted unless they arise in a context of a controversy 'ripe' for judicial resolution." Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322, 651 F.3d 176, 188 (1st Cir. 2011) (quoting Abbott Labs. v. Gardner,

387 U.S. 136, 148-49 (1967)). Indeed, "[t]he need for ripeness is emphasized in the Declaratory Judgment Act… which refers to an 'actual' controversy. This is a *sine qua non* of any assumption of federal jurisdiction." Verizon New England, Inc., 651 F.3d at 188. For a claim to be ripe in the declaratory judgment context, two prongs must be met: fitness for review and hardship. Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir.1995); Wesson v. Town of Salisbury, 13 F. Supp. 3d 171, 177 (D. Mass. 2014). With respect to the first prong, "[f]itness involves the question of whether 'the claim involves uncertain and contingent events that may not occur as anticipated or indeed may not occur at all.'" Wesson, 13 F. Supp. 3d at 177 (quoting Mass. Ass'n of Afro–Am. Police, Inc. v. Boston Police Dept., 973 F.2d 18, 20 (1st Cir. 1992)). With respect to the second prong, the "hallmark of cognizable hardship is usually direct and immediate harm." Wesson, 13 F. Supp. 3d at 177 (quoting Ernst & Young, 45 F.3d at 536).

As the Superior Court previously determined, the MWRA's declaratory judgment claims fail to identify any actual controversy between the parties. Indeed, the claim is in the exact same posture as it was when the Superior Court determined that it was not ripe: *i.e.,* the Eversource Defendants have not incurred any Cable Protection Costs which they currently seek to impose on the MWRA, nor have they billed the MWRA for any Cable Protection Costs. The MWRA's bald assertion that the "dispute is ripe and capable of final resolution" is insufficient to state a cognizable claim for declaratory judgment. See Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir. 2013) ("rote recital of the elements of a cause of action" insufficient to survive a motion to dismiss); Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2013) ("allegations that merely parrot the elements of the cause of action" insufficient to survive a motion to dismiss).

Moreover, "[s]imply because there is an actual controversy between the parties does not mean that the district court is required to exercise that jurisdiction." In re Columbia Univ. Patent Litig., 343 F. Supp. 2d 35, 42 (D. Mass. 2004); EMC Corp. v. Norand Corp., 89 F.3d 807, 813 (Fed. Cir. 1996). See also El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992) ("The Declaratory Judgment Act is uncommon in that it neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies.") (internal citations omitted). Here, because the issue of liability for future Cable Protection Costs is subject to the primary jurisdiction of the D.P.U., the Court should exercise its sound discretion and decline to grant the MWRA's request for declaratory judgment.

### d. Count III of the MWRA's Cross-claims Fails to State a Viable Claim under Chapter 93A.

The MWRA's Chapter 93A cross-claim (Count III) fails to state a cognizable claim because it is based on a fundamentally incorrect premise, i.e., that the Eversource Defendants breached the obligations under the Interconnection Agreement by failing to negotiate a successor Agreement in good faith by attempting to impose an "un-bargained for and absolute pre-condition" that the MWRA agree to join and participate in the ISO-New England Forward Capacity Market ("FCM") and use those revenues to pay for any future Cable Protection Costs. See Crossclaims, ¶¶ 40-41. As the Superior Court previously concluded, even if these assertions were true, and they are not, they would not amount to a violation of Chapter 93A.

First, to the extent that the MWRA's Chapter 93A claims are based on positions taken by the Eversource Defendants during the negotiation of the successor Agreement, such claims must fail because positions taken by a party during contract negotiations generally cannot form the basis for a Chapter 93A claim. Under Massachusetts law, a party cannot be held liable for imperfect or unsuccessful contract negotiations. See e.g., Lambert, 449 Mass. at 127. Nor is it

unfair or deceptive to decline to continue negotiating when said negotiations have proven unsuccessful. See Pappas Indus. Parks, Inc. v. Psarros, 24 Mass. App. Ct. 596, 600 (1987). Indeed, "every deal that goes sour does not give rise to Chapter 93A claim." Id.

Absent any allegation of conduct that would give the alleged breaches of contract "the rancid flavor of unfairness," a failure to perform obligations under a contract, even if deliberate and for reasons of self-interest, does not present an occasion for invocation of Chapter 93A remedies. Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992). "[A] mere breach of a legal obligation under commercial law, without more, does not amount to an unfair or deceptive act under [Chapter 93A]"). Framingham Auto Sales, Inc. v. Workers' Credit Union, 41 Mass. App. Ct. 416, 418 (1996). "[T] breach must be both knowing and intended to secure "unbargained-for benefits" to the detriment of the other party." City of Revere v. Boston/Logan Airport Assocs., LLC, 416 F. Supp. 2d 200, 209 (D. Mass. 2005). The conduct must go beyond mere self-interest and rise to the level of "commercial extortion." Id. (citing Atkinson, 33 Mass. App. Ct. at 226 and quoting Comm. Union Ins. Co. v. Seven Provinces Ins. Co., Ltd., 217 F.3d 33, 40 (1st Cir. 2000)).

As the MWRA acknowledges in its cross-claim, beginning in 2013 and continuing into late 2015, the parties engaged in exhaustive efforts to negotiate the terms of a successor agreement; these negotiations expanded to include a proposal that the MWRA participate in the FCM and use those revenues to pay for any future Cable Protection Costs. See Crossclaims, ¶¶ 40-41. The MWRA ultimately rejected this proposal because it was unwilling to assume the operational risks associated with participating in the FCM. Contrary to the unfounded assertions contained in the MWRA's cross-claims, the Eversource Defendants did not "demand" that the MWRA join the FCM, nor was the MWRA's participation in the FCM a "pre-condition" to the

negotiation of a successor agreement.  Rather, it was simply one of many proposals exchanged

by the parties during the negotiation process.  Like all proposals made by the Defendants in the

context of these negotiations, this proposal was substantive, reasonable, and advanced in good

faith.  More importantly, even if it was not, as the Massachusetts Superior Court previously

concluded, any such breach of the Interconnection Agreement was merely a garden-variety

breach of contract that does not rise to the level of a Chapter 93A violation.

### e.  The MWRA's Cross-Claims Violate Longstanding Rules Prohibiting "Claim-Splitting" and Should Therefore be Dismissed

"Claim-splitting… is a 'long-barred practice' in Massachusetts."  Forgione v. Trustees of

Boston Univ., C.A. No. 13-11934-RGS, 2013 WL 6624016, at *2 (D. Mass. Dec. 17, 2013)

(citing M.J. Flaherty Co. v. U.S. Fid. & Guar. Co., 61 Mass. App. Ct. 337, 339 (2004); Puerto

Rico Maritime Shipping Auth. v. Fed. Maritime Comm'n, 75 F.3d 63, 67 (1st Cir. 1996)).  See

also F & D Tool Co. v. Sloan Valve Co., C.A. 01-30154-MAP, 2002 WL 31371963, at *6 (D.

Mass. Oct. 17, 2002).  The rule against claim-splitting requires a claimant to "assert all his

various legal theories and factually related allegations the first time he brings suit."  Kale v.

Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991) (quoting Roe v. Town of

Harwich, 778 F.3d 77, 79 (1st Cir. 1985)).

"[I]t necessarily follows that a particular legal theory not pressed in the original suit will

nonetheless be precluded in the subsequent one if it prescinds from the same set of operative

facts."  Kale, 924 F.2d at 1166.  See also Kelly v. Nortel Networks Corp., 86 F. App'x 439, 439-

40 (1st Cir. 2004) (rule against claim-splitting applies to "two suits involv[ing] the same cause of

action, i.e., the same transaction or series of transaction").  "This principle will be applied to

extinguish a claim even though the plaintiff is prepared in the second action to present evidence,

grounds, or theories of the case not presented in the first action or to seek remedies or forms of

relief not demanded in the first action." Forgione, 2013 WL 6624016, at *2; Boyd v. Jamaica Plain Co-op. Bank, 7 Mass. App. Ct. 153, 163 (1999). See also Pasterczyk v. Fair, 819 F.2d 12, 14 (1st Cir. 1987) ("A second action is barred even though the plaintiff raises in that action new theories of liability or damages not presented in the first suit."). Thus the rule bars, in any subsequent proceeding, the litigating or re-litigating of any claim that was or could have been litigated in a prior action. See Gener-Villar v. Adcom Grp., Inc., 417 F.3d 201, 205 (1st Cir. 2005); Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 42 (1st Cir. 1985). Here, the MWRA "could and should have raised [its indemnification claim] in the state court proceeding for declaratory… relief." Pasterczyk, 819 F.2d at 15 (1st Cir. 1987). The MWRA's failure to do so "runs contrary to the goals of both the declaratory judgment procedure and res judicata in regard to finality and conservation of scarce judicial resources." Id.

The MWRA does not specify whether it seeks such indemnification under a contractual or common-law theory of liability. To the extent that it is the former, the indemnification claim is nothing more than a re-hash of its previously rejected claim that it should not be held contractually responsible for any future Cable Protection Costs. As such, this indemnification claim should be rejected because it is subject to the primary jurisdiction of the D.P.U., barred by the prior pending action doctrine, and/or not ripe for adjudication. To the extent that the MWRA asserts a common-law claim for indemnification, such claim should be dismissed pursuant to the rule against claim-splitting, because the MWRA could have asserted this claim in the state-court proceeding. See Integrated Techs. Ltd., 2 F. Supp. 2d at 105. In the event that the Court allows the MWRA's common law indemnification claim to proceed, it should, at the very least, limit that claim to damages which are not duplicative of the Cable Protection Costs, *i.e.*, any fines and civil penalties that may assessed against the Defendants under the relevant statutes.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant its Motion to Dismiss the MWRA's Cross-Claims.

Respectfully submitted,

NSTAR ELECTRIC COMPANY d/b/a
EVERSOURCE ENERGY and HARBOR
ELECTRIC ENERGY COMPANY

By their attorneys,

/s/ Michael R. Perry
Michael R. Perry (BBO No. 555300)
Jennifer A. Sunderland (BBO No. 673278)
Shauna R. Twohig (BBO No. 685590)
MANION GAYNOR & MANNING LLP
125 High Street, 6th Floor
Boston, MA 02110
(617) 670-8800
mperry@mgmlaw.com
jsunderland@mgmlaw.com
stwohig@mgmlaw.com

Dated:    August 30, 2016

## Certificate of Service

I certify that, on August 30, 2016, this document filed through the ECF system will be sent electronically to counsel for the Plaintiff, Christine J. Wichers, and for the Massachusetts Water Resource Authority, Jonathan M. Ettinger and Jeremy W. Meisinger.

/s/ Michael R. Perry
Michael R. Perry

#1631156v1

21